**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BETTY SHORT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 7026 |
| | ) | |
| ULTRA FOODS, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Betty Short ("Short"), an African-American woman, worked for Defendant SVT, LLC, doing business as Ultra Foods ("SVT"), from 1997 until SVT terminated her employment on March 29, 2007.  Short sued SVT in a four-count complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1982 *et. seq.*  At this time, Short's only surviving claim is Count II, in which she complains that she was terminated because of her race in violation of Title VII.

SVT now moves for summary judgment on the remaining discrimination claim and also moves to strike portions of Plaintiff's Statement of Additional Facts, the declarations of two of Plaintiff's witnesses, and Plaintiff's Response to Defendant's Statement of Material Facts.  For the reasons stated below, this court grants summary judgment in favor of SVT on the discriminatory termination claim and denies SVT's motion to strike as moot.

## I.    The Parties

The facts are recounted in a light most favorable to Short, the non-moving party.  Short began working as a clerk in the deli department of SVT's Ultra Foods supermarket in Lansing, Illinois, in 1997.  (Def.'s 56.1 ¶ 1.)  Short was supervised by Dolores Kerr ("Kerr"), the deli manager, and by two assistant managers, Albina Bachmeier ("Bachmeier") and Donna Cohen ("Cohen"), both white women.  (Def.'s 56.1 ¶ 3.)  Bob Townes, the assistant store manager who terminated Ms. Short, is African-American; Vince McConnell, the store manager, is white.  (Def.'s 56.1 ¶¶ 4, 5, 53.)

SVT maintains an Associates Handbook ("Handbook") that sets forth the company's rules and procedures.  (Def.'s 56.1 ¶ 23; Handbook, Ex. 14 to Short Dep.)  On April 4, 2005, Short, in writing, acknowledged receiving the handbook and agreed to abide by its guidelines.  (Def.'s 56.1 ¶ 23; Handbook Policy Acknowledgment, Ex. 13 to Short Dep.)  That Handbook explains SVT's Equal Employment Opportunity Policy, which prohibits discrimination on the basis of race, and the company's Harassment Policy, which prohibits harassment on the basis of race as well as retaliation against an employee who has complained of discrimination or harassment.  (Def.'s 56.1 ¶ 24; Handbook at 6, 26.)  In the event of alleged harassment or discrimination, the Handbook instructs the aggrieved employee to report the matter so that there can be an investigation and, if necessary, corrective action.  (*Id.*)

In addition, the SVT Handbook states that all food consumed by employees within the store must be purchased before it is eaten, and prohibits employees from taking food items unless full

---

[1]    The facts presented here are drawn from the parties' Local Rule 56.1 Statements: Defendant's Local Rule 56.1 Statement of Material Facts in Support of Its Motion for Summary Judgment ("Def.'s 56.1"); Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Material Facts ("Pl.'s 56.1 Resp."); Plaintiff's Statement of Additional Facts that Require Denial of Defendant's Motion for Summary Judgment ("Pl.'s 56.1 Stmt."); and Defendant's Response to Plaintiff's Statement of Additional Facts Requiring Denial of Defendant's Motion for Summary Judgment ("Def.'s 56.1 Resp.").

payment has first been made. (Def.'s 56.1 ¶ 25; Handbook at 17.) Employees are required to have a receipt verifying any purchases for their personal use; the Handbook states explicitly that "failure to follow this rule may result in termination." (Def.'s 56.1 Resp. ¶ 10; Handbook at 12, 17.) The Handbook later reiterates that termination shall result for employees who give "unauthorized discounts to any customers" or "who consume food or drink that they did not purchase and are unable to provide a receipt." (*Id.* at 20.) Furthermore, the Handbook also provides that "[p]rogressive disciplinary action will be used except in those instances where the company decides more severe action to be more appropriate." (*Id.* at 46.)

## II.    Short's Termination

On March 28, 2007, Short was observed consuming a peach cobbler valued at $4.99 without first paying for it. (Employee Termination Form, Ex. 20 to Short Dep.) When Kevin Wagner ("Wagner"), a manager in the non-foods department, questioned her about it, Short admitted to consuming food for which she had not paid. (Def.'s 56.1 ¶ 53; Employee Termination Form.) Short was issued a Corrective Action Notice that suspended her employment "indefinately [sic] pending investigation." (March 28, 2007 Corrective Action Form, Ex. 21 to Short Dep.) The Notice further stated that "[Short] will need to see the store manager before her next scheduled shift." (*Id.*) The following day, on March 29, 2007, Bob Townes, the assistant store manager, terminated Short's employment. (Pl.'s 56.1 Resp. ¶ 53.) In his declaration, Townes asserts that he terminated her employment "because she admitted to me that she consumed food within SVT's store without paying for it on March 28, 2007." (Declaration of Bob Townes ("Townes Decl.") ¶ 6.) Short does not believe that Townes discriminated against her or lied about her because of her race. (Pl.'s 56.1 Resp. ¶ 53.) She nevertheless contends that her conduct in eating food without paying for it was not the actual reason for her termination. She asserts that it is not clear how the manager on duty learned that Short had consumed the peach cobbler. (Employee Termination Form.) In her deposition, Short repeatedly denied that she was observed actually consuming the food (Short Dep.

153:5-9, 156:5-7), but it is apparently undisputed that she acknowledged having done so similarly situated individuals were not discharged for the same infraction, and that she was terminated based upon her race. (*Id.* at ¶ 54.)

### III.    Alleged Policy Violations by Other SVT Employees

In the last ten years, the only other instance at the Lansing, Illinois, store in which an employee was terminated for misconduct similar to Short's occurred on July 17, 2006. (Def.'s 56.1 Resp. ¶ 58; Employee Apprehension Form, Ex. H to Pl.'s 56.1 Resp.) Margarita Franco ("Franco"), an Hispanic deli crew leader at SVT, was discharged after being caught on tape discounting and giving away deli food to bakery employee Gabby Pop ("Pop"). (*Id.*) As a deli crew leader, Franco's duties differed from those of a deli clerk like Short: a deli crew leader functions independently, supervises other deli employees, supervises tasks and orders, and receives $0.50 more per hour than a deli clerk. (Def.'s 56.1 Resp. ¶ 1.) Gabby Pop, the bakery employee involved in the 2006 incident, was also discharged. (Def.'s 56.1 Resp. ¶ 19; Short Dep. 210:24-211:13.)

Short characterizes Franco's misconduct differently; she asserts that Franco engaged in a price-changing scheme that is not analogous to consumption of food without payment. (Pl.'s 56.1 Resp. ¶ 58.) Short insists that although SVT maintained a policy prohibiting consumption of food without paying for it, that policy was not enforced, and other employees also ate food without paying for it but suffered no consequence. (Pl.'s 56.1 Resp. ¶¶ 25, 57.) She apparently made the same assertion during her termination meeting; Townes recalls asking Short to identify other employees "who had been eating food without paying for it," but Short "did not name any other employee who had eaten unpaid for food." (*Id.* at ¶ 57; Townes Decl. ¶ 9.) Short acknowledged that she had never reported to SVT management that any other employees had eaten food without paying for it. (Pl.'s 56.1 Resp. ¶ 57; Short Dep. 157:12-14.) She explained that "[she] couldn't report it to anyone because everybody–every manager in that store eat, every manager except Vince [McDonnell]. I have never seen Vince eat anything, but everybody else come back there and eat."

4

(Pl.'s 56.1 Resp. ¶ 57; Short Dep. 157:3-10.)

Although she did not report it at the time of her termination, Short now asserts that, on the same day Short ate the peach cobbler, Donna Cohen was also in the back of the store, eating rib tips without paying for them, and that another deli employee, Joan Robinson ("Robinson"), was also eating food for which she had not paid. (Pl.'s 56.1 Resp. ¶ 57; Short Dep. 156:14-20.) Cohen herself denies this, and testified that Robinson was not in the back area on March 28, 2007. (Pl.'s 56.1 ¶ 57; Cohen Dep. 44:20-22, 45:5-10, 45:14-19.) In addition, Short believes that other non-African American deli employees also consumed unpaid-for food on other occasions, but were not disciplined or terminated as a result. (*Id.*) She submitted the declarations of Dorothy Shaw ("Shaw") and Grace Simon ("Simon"), two former SVT employees, both of whom stated that they had witnessed non-black employees who had consumed food without payment but were not disciplined or terminated. Shaw and Simon specifically identified Dorothy Drysdale ("Drysdale"), Phyllis Malecki ("Malecki"), and Gina Foore ("Foore"). (Pl.'s 56.1 Stmt. ¶¶ 15, 17; Declaration of Dorothy Shaw ("Shaw Decl.") ¶ 8, Ex. C to Pl.'s 56.1 Resp.; Declaration of Grace Simon ("Simon Decl.") at ¶ 8, Ex. D to Pl.'s 56.1 Resp.)

Both Shaw and Simon also declare that on a frequent and regular basis, they witnessed non-black managers and assistant managers, including Bachmeier, Kerr, Cohen, and Susan Draus ("Draus")[2], consume food for which they had not paid, and that these employees were never disciplined or terminated as a result. (Pl.'s 56.1 Stmt. ¶¶ 16, 18.; Shaw Decl. ¶ 10; Simon Decl. ¶ 10.) Shaw and Simon acknowledge that some of the food was "new" food to the store that the managers and assistant managers would have had permission to sample without first purchasing; on many other occasions, however, Shaw and Simon insist, these managers and assistant

---

[2]     Plaintiff correctly notes that Susan Draus, the seafood department manager, is intermittently referred to in the record as Susan Droust. (Pl.'s 56.1 Stmt. at n.2.)

managers ate food that was not " 'new' to the store and not purchased prior to consumption." (Shaw Decl. ¶¶ 9, 10; Simon Decl. ¶¶ 9, 10.)

In addition to these purported violations of policy by managers and assistant managers, Shaw and Simon asserted that managers and assistant managers tolerated violations by their subordinates. Both declarations state in identical terms, "On a frequent and regular basis, I witnessed non-black employees consume unpaid-for food in front of managers and assistant managers, including Albina Bachmeier, Delores Kerr, Donna Cohen, and Susan Droust [sic]. To the best of my knowledge and belief, these employees were never disciplined or terminated as a result." (Shaw Decl. ¶ 12; Simon Decl. ¶ 12.) Neither Shaw nor Simon has offered any specifics; they have not identified the date or time of the claimed infractions, nor have they described the food consumed, the witnesses present, or any other circumstances. For these reasons, and because Shaw last worked for SVT in November 2005, and Simon in February 2007, SVT has moved to strike their declarations as conclusions not supported by facts. (Def.'s 56.1 Resp. ¶¶ 15-18; Defendant's Motion to Strike, Docket No. 89, ¶ 2.)

For their part, SVT supervisors have denied that they were aware of any specific incidents in which employees consumed food for which they had not paid. Kerr testified that she had never seen an Ultra Foods employee consume unpaid-for food. (Pl.'s 56.1 Resp. ¶ 8; Kerr Dep. at 38:19-22.) Cohen testified that she had never witnessed any managers or employee consume unpaid-for food on the Ultra Foods premises. (Pl.'s 56.1 Resp. ¶ 13; Cohen Dep. 46:9-20.) Bachmeier also stated that she never saw any other SVT employees consume unpaid-for food. (Pl.'s 56.1 Resp. ¶ 3; Bachmeier Dep. 31:23-32:5, 47:21-23.) Bachmeier acknowledged that on some occasions, she found half-eaten food; but she never found out who was responsible:

> And like when we come in in the morning and you go through the walkway, you'll find something or you'll find something in the warmer. And you assume that it was the night girls but you don't have any – I don't have any proof, you know. And they won't say who did it. They'll say, well, somebody in the night did. So it's very hard for me to say. I guess I do hear. I hear all the time but no names.

(Def.'s 56.1 Resp. ¶ 4; Bachmeier Dep. 38:10-19.)

**IV.     Procedural History**

On November 15, 2004, Short filed a first charge of discrimination (the "First Charge") with the Illinois Department of Human Rights and the U.S. Equal Opportunity Commission alleging that SVT discriminated against her due to her race between February 1, 2004 and October 25, 2004. (Pl.'s 56.1 Resp. ¶ 6; Charge of Discrimination dated November 18, 2004, Ex. 1 to Short Dep.) Because Plaintiff did not file a complaint within 90 days of issuance of a right-to-sue letter, the court dismissed claims arising out of that First Charge by order dated November 5, 2007. (Minute Order, Docket No. 70, Ex. B to Pl.'s 56.1 Resp.)

On April 30, 2007, Short filed a second charge of discrimination (the "Second Charge") with the IDHR and EEOC, alleging that SVT discriminated against her between January 1, 2006 and March 29, 2007, the day she was terminated. (Pl.'s 56.1 Resp. ¶ 11; Charge of Discrimination dated April 30, 2007, Ex. 5 to Short Dep.) Specifically, Short alleged that: (1) in November 2004 she filed a charge of discrimination against SVT; (2) in 2005 she filed this lawsuit against SVT alleging race discrimination; (3) from January 1, 2006 through March 28, 2007 she was subjected to harassment and different terms and conditions of employment than similarly situated non-black employees; and (4) on March 28 [sic], 2007, she was discharged from her employment and similarly situated non-black individuals who engaged in misconduct similar to hers were not discharged from their employment. (Pl.'s 56.1 Resp. ¶ 12.) The EEOC issued Short a notice of Right to Sue letter pertaining to the Second Charge of discrimination on May 10, 2007, and this timely complaint followed. (*Id.*)

## DISCUSSION

**I.     Standard of Review**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, the court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir.2001); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court is not required to draw every conceivable inference from the record; however, speculation or conjecture will not defeat a summary judgment motion. *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) (citation omitted).

Short alleges that she was treated differently than other similarly situated non-black employees by SVT supervisors and managers in violation of Title VII. (Plaintiff's Third Amended Complaint ("Am. Compl.") ¶ 23.) She claims specifically that SVT stringently applied the "no consumption of food without payment" policy against her, while ignoring infractions by similarly-situated non-black employees. (Am. Compl. ¶ 26.) In response to a motion for summary judgment, a plaintiff may establish a Title VII claim under either the "direct" or the "indirect" (burden-shifting) method of proving discrimination. *See Thanongsinh v. Board of Educ.*, 462 F.3d 762, 772 (7th Cir. 2006). In this case, Short has opted to utilize the indirect method to prove that SVT discriminatorily discharged her. Accordingly, this court will proceed to analyze Short's claim under the indirect method only.

To prove discrimination under the indirect method, the plaintiff must first establish a prima face case of discrimination by showing that (1) she is a member of the protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other similarly-situated employees who were not members of the protected class were treated more favorably. *Rozskowiak v. Village of Arlington Heights*, 415 F.3d 608, 614 (7th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff's evidence

is sufficient for a reasonable jury to find a prima facie case of unlawful discrimination, then defendant must offer a legitimate, non-discriminatory reason for the adverse employment decision. *Sun v. Board of Trustees of Univ. of Ill.*, 473 F.3d 799, 814 (7th Cir. 2007); *Ptaskznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). The plaintiff then survives summary judgment if she can demonstrate that the reason articulated by defendant is in fact pretextual. . *Ptaskznik*, 464 F.3d at 696.

## II.     Prima Facie Case

It is undisputed that Short is a member of a protected class and that she suffered an adverse employment action when she was terminated. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem.") at 5.) The parties disagree, however, as to whether Short was meeting SVT's legitimate expectations and whether other similarly-situated employees who were not members of the protected class were treated more favorably. (*Id.*) As discussed below, this court finds that Short has not met her burden of establishing the remaining two elements of her prima facie case.

### A.     Legitimate Expectations

Short argues, first, that the requirement of demonstrating that she was meeting SVT's legitimate expectations should be excused in this case, as it was in *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 2002). (Pl.'s Mem. at 6-8.) In *Flores*, 10 to 12 employees, including the plaintiff, left their work stations to protest the strict enforcement of a new break rule policy. 182 F.3d at 513-14. When plaintiff alone was terminated, she filed suit, alleging that her termination was based on her Hispanic national origin. *Id.* Defendant moved for summary judgment, arguing that because Flores was admittedly engaging in an unlawful strike, she was not meeting her employer's legitimate expectations at the time she was terminated. *Id.* at 513, 515. Taking into account the unique facts of the case and the flexibility of the *McDonnell-Douglas* standard, the Seventh Circuit stated that it made "little sense in this context to discuss whether

[Flores] was meeting her employer's reasonable expectations." *Id.* at 515. Because none of the employees involved in the protest were meeting their employer's legitimate expectations and any or all of them could have been fired, the Seventh Circuit reasoned that the proper issue was rather whether Flores had been singled out for discipline because of her national origin. *Id.*

As SVT correctly reasons, the circumstances surrounding Short's termination are distinguishable from *Flores*. Unlike *Flores*, in which a group of employees were together openly disregarding the new break rule in front of their supervisors, Short was not involved in a similar group situation. According to Plaintiff herself, just one other employee – manager Donna Cohen – was also in the back of the store, eating with Short on the day she was suspended. (Pl.'s 56.1 ¶ 57; Short Dep. 156:14-20.) Cohen denies this, (Pl.'s 56.1 Resp. ¶ 57; Cohen Dep. 44:16-22), but even assuming it is true, Short offers no evidence that any SVT supervisors or higher-level-managers--including in particular Townes, the decision-maker--were aware of Cohen's policy violation. This contrasts with *Flores*, in which the employer could specifically identify all of the rule-breakers involved in the protest. In this case, Short is the employee of whom Townes was aware who violated SVT's food-consumption policy. It is undisputed, in fact, that Townes asked Short what other employees had violated the policy, and Short identified no one. Put simply, Short was not singled out among other known violators, as was the plaintiff in *Flores*. A plaintiff seeking to establish employment discrimination under the "indirect method" must ordinarily show that she was meeting her employer's legitimate expectations; the exception to that requirement recognized in *Flores* does not apply here. *See Peters v. Renaissance Hotel Operating Co.* 307 F.3d 535, 546 (7th Cir. 2002) (stating that a plaintiff could not use *Flores* reasoning to circumvent the legitimate expectations requirement because the plaintiff was not singled out for discipline).

Short cannot establish that she was meeting SVT's legitimate expectations. She admitted to SVT management, including Townes, that she had consumed a peach cobbler for which she had not paid, a violation of SVT's written policy. (Pl.'s 56.1 Resp. ¶ 53; Employee Termination Form.)

SVT's Handbook makes clear that a violation of that policy constitutes grounds for termination. (Handbook at 20.)[3]

### B.      Similarly Situated Employees

Nor has Short identified any similarly-situated non-black deli employees treated more favorably than she was.  To do so, Short must identify an employee who was "directly comparable to [her] in all material respects." *Ajayi v. Aramark Bus. Servs., Inc.,* 336 F.3d 520, 531-32 (7th Cir. 2003) (quoting *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002)).  Specifically, a plaintiff who contends that she was disciplined more harshly than other workers must show that she was similarly situated to those other workers in terms of performance, qualifications, and conduct.  *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617 (7th Cir. 2000).  "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 617-18.

Short has not made such a showing.  She argues that other employees consumed unpaid-for food but were not disciplined or terminated as a result.  (Pl.'s Mem. at 8-9.)  The evidence she offers consists of the declarations of former SVT employees Shaw and Simon who assert, without any dates, times, identities, or other specifics, that others consumed food without paying for it, but received no resulting discipline.[4]  "Rule 56 demands something more specific than the bald assertions of a particular matter, rather it requires affidavits that cite specific concrete facts

---

[3]      SVT reserved the right to terminate an employee rather than resort to the progressive discipline policy when deemed appropriate.  (Handbook at 46.)  Thus, the fact that Short was terminated rather than placed on a progressive discipline plan does not suggest that the progressive discipline policy was not enforced.

[4]      Plaintiff characterizes these witnesses as "disinterested," but she testified that Simon is her best friend.  (Short Dep. 166:5-6.)

establishing the existence of the truth of the matter asserted." *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 726 (7th Cir. 2004) (quoting *Drake v. Minnesota Mining and Manufacturing Company*, 134 F.3d 878, 887 (7th Cir. 1998)). A close examination of the Declarations of Shaw and Simon illustrates that they are not sufficient to establish this prong of Short's prima facie case for several reasons.

Shaw and Simon offer no details concerning the alleged consumption of food by managers, nor have they explained the source for their knowledge that "on many occasions" the food that they saw these managers consume was not "new" to the store. In any event, a manager or assistant manager is not "directly comparable to [Short] in all material respects." *Ajayi*, 336 F.3d at 531-32. Nor have Shaw or Simon so much as suggested that the decision-makers involved in Short's case knew of the alleged violations by these unnamed managers.

Shaw and Simon did specifically identify Drysdale, Malecki, and Foore as employees who, like Short, violated the food payment policy. Beyond the fact that Malecki and Foore are both white and were "deli co-workers" of Short, (Def.'s 56.1 ¶ 21; Pl.'s Mem. at 8 n.6), Short offers no specifics regarding the alleged infractions, nor has she identified the dates on which they occurred, the supervisors for whom they worked, or their positions. Assuming that Drysdale, Malecki, and Foore are in fact similarly situated, however, the fact that these three SVT employees consumed unpaid-for food but were not disciplined or terminated does not by itself establish that they were treated more favorably by SVT. Short offers no basis for concluding that SVT managers were aware that Drysdale, Malecki, and Foore had violated SVT policy. Without this awareness, SVT managers could not have treated the employees more favorably, and Drysdale, Malecki, and Foore cannot serve as evidence of the fourth element of Short's prima facie case.

Short's contention that Shaw and Simon "witnessed non-black employees consume unpaid-for food in front of managers and assistant managers" including Bachmeier, Kerr, Cohen, and Draus fails for similar reasons. (Shaw Decl. ¶ 12; Simon Decl. ¶ 12.) Short has not provided the

identities of the employees who allegedly consumed unpaid-for food in the presence of SVT management, nor any basis for determining whether the unidentified employees were similarly situated. Indeed, there is, in this record, no evidence that Bachmeier, Kerr, Cohen, and Draus were aware that the food that unnamed employees allegedly consumed in their presence had not been purchased beforehand. To the contrary, Kerr, Cohen and Bachmeier were unaware of any purported policy violations; all testified that they have never seen an SVT employee consume unpaid-for food on premises. (Kerr Dep. 38:19-22; Cohen Dep. 46:9-20; Bachmeier Dep. 31:23-32:5, 47:21-23.) Without evidence that SVT management was aware that other deli employees consumed unpaid-for food and that SVT management subsequently failed to terminate the employees, Short cannot establish that another employee engaged in similar conduct and was treated more favorably.

Short points out that Bachmeier testified that she had heard rumors of employees consuming food for which they had not paid and had also found half-eaten food in the store. (Pl.'s 56.1 Stmt. ¶ 4; Bachmeier Dep. 38:10-19.) This testimony does not support Short's claims. If anything, Bachmeier's attempts to determine who had left the food–however unsuccessful those efforts may have been–demonstrates that SVT management did not tolerate the conduct. Nor is the discovery of half-eaten food an undisputed violation of the policy; it is not clear whether the half-eaten food had been purchased or whether it was "new" to the store.

Short contends that Cohen was in the back of the store, also eating food for which she had not paid, on the day of Short's suspension. (Pl.'s 56.1 Resp. ¶ 57; Short Dep. 156:14-20.) Again, Cohen denies this (Cohen Dep. 44:20-22, 45:14-19), but even if it is true, there is no evidence that Townes was aware that Cohen had consumed unpaid-for food at the time of Short's termination. In fact, during the termination meeting, Townes asked Short to identify other employees who had consumed unpaid-for food, but Short did not identify any employees other than herself. (Pl.'s 56.1 Resp. ¶ 57.; Townes Decl., Ex. G to Def.'s 56.1 ¶ 9.) In sum, Short has not provided any evidence

that Townes was aware that non-black employees were consuming unpaid-for food and that he did not terminate them.

## III.    Pretext

If Short had established a prima facie case of employment discrimination, summary judgment would nevertheless be appropriate here because SVT has articulated a legitimate, non-discriminatory reason for Short's termination: her consumption of food in violation of the Handbook. *See Sun*, 473 F.3d at 814.  Short has the burden of showing that this proffered reason for her termination is a pretext. *Ptaskznik*, 464 F.3d at 696.  The Seventh Circuit has explained that a pretext is a "lie, specifically a phony reason for some action."  *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006) (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)).  Establishing pretext "requires more than showing that the decision was 'mistaken, ill considered or foolish, [and] so long as [the employer] honestly believes those reasons, pretext has not been shown.' " *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)).

The evidence here does not support a finding of pretext.  Short has admitted that Townes, the decision-maker who terminated her, did not discriminate against her.  (Pl.'s 56.1 Resp. ¶ 53.) Because Short admitted to Townes that she had consumed unpaid-for food, there is no evidence to suggest that Townes did not honestly believe that Short had violated SVT policy.[5]  The fact that at least two other employees, Franco and Pop, were discharged for similar misconduct, bolsters SVT's contention that Short's consumption of food she had not purchased was the genuine reason for her discharge. In both instances, SVT discharged the employee once management became

---

[5]    The suggestion that the March 28, 2007 Corrective Action Notice is evidence of pretext is unfounded.  (Pl.'s Mem. At 12 n.8.)  The Notice suspended Short indefinitely pending investigation, and required her to see Townes before her next scheduled shift.  (March 28, 2007 Corrective Action Notice.)  There is no evidence within the Notice that Townes used the theft to discriminate against Short, and, more importantly, Plaintiff has acknowledged that Townes did not discriminated against her because of her race.  (Pl.'s 56.1 Resp. ¶ 53.)

aware of the policy violations, demonstrating, as Defendant asserts, that SVT "applies its policy in a consistent and even-handed manner."[6] (Defendant's Reply Memorandum of Law in Support of its Motion for Summary Judgment ("Def.'s Reply Mem.") at 13.)

## IV.     SVT's Motion to Strike

SVT has filed a motion to strike portions of Plaintiff's 56.1 Statement, the Shaw and Simon Declarations, and Plaintiff's Response to Defendant's 56.1 Statement.   Motions to strike are disfavored except when they serve to expedite the work of the court.   *RLJCS Enters., Inc. v. Prof'l Benefit Trust, Inc.,* 438 F. Supp .2d 903, 906-07 (N.D. Ill. 2006).   Because this court grants Defendant's motion for summary judgment, the motion to strike is denied as moot.

<u>**CONCLUSION**</u>

For the foregoing reasons, the court grants Defendant's motion for summary judgment [71] and denies Defendant's motion to strike [89] as moot.

ENTER:

Dated: September 24, 2008

_____

REBECCA R. PALLMEYER
United States District Judge

---

[6]     As SVT correctly notes, Short's contention that the policy against employee theft was not strictly enforced because Pop, Franco's cohort in the theft, was not terminated is plainly incorrect.   Short herself noted that Pop was discharged along with Franco in connection with the theft.  (Short Dep. 210:24-211:13; Cohen Dep. 39:4-41:19; Documents from the Personnel File of Margarita Franco, Ex. H to Pl.'s 56.1 Resp.)